## Case No. 7,398.
### JOHNSON v. MERCHAND.

## Case No. 7,399.
### JOHNSON v. MONELL.
[1 Woolw. 390.] [1]
Circuit Court, D. Nebraska. May Term. 1869.

[1] [Reported by James M. Woolworth, Esq., and here reprinted by permission.]

Mr. Doane for the motion.
Mr. Wakely, contra.

MILLER, Circuit Justice. This case is transferred to this court by an order of the state court in which it was originally brought, on motion of the plaintiff, made after a verdict of the jury in his favor had been set aside by the court. The defendant G. C. Monell now moves to dismiss the case, or to send it back to the state court, on the ground that this court has no jurisdiction in the premises.

Removals of suits from the state courts, on the ground of citizenship of the parties, were until recently governed exclusively by the 12th section of the judiciary act (1 Stat. 79). By the provisions of that act, the right of removal was limited to a defendant who was an alien, or a citizen of a state other than that in which the suit was brought, and who asserted his right at the time of entering his appearance in the state court. Here the plaintiff claims the removal, and he does so

after the parties have, as citizens of the state in which the suit was first brought, litigated it to a jury trial, a verdict, and an order of the court setting aside the verdict and granting a new trial. The citizenship on which this right is founded is obtained by his voluntary change of residence after all this is done. This is such a wide departure from the restrictions by which congress had heretofore guarded the right of removal, and the proposition that a party instituting the litigation in the state court, and pressing it to the point here mentioned, can, by his own voluntary change of residence, acquire a right to remove the case from the forum of his own selection, is so startling, that nothing short of the clearest evidence that congress had both the power and the intention to grant such a right, will justify this procedure.

The act of March 2, 1867, which is relied on in support of our jurisdiction, works very important changes in the principles heretofore governing the rights of parties to remove causes from the state courts into the federal courts. For the first time, it allows a plaintiff to remove the suit from the tribunal of his own selection. It also allows this to be done either by plaintiff or defendant, in a certain event, in any stage of the litigation prior to the final hearing or trial. The only conditions necessary to the exercise of the right of removal are: (1) That the controversy shall be between a citizen of the state in which the suit is brought, and a citizen of another state. (2) That the matter in dispute shall exceed the sum of $500, exclusive of costs. (3) That the party, citizen of such other state, shall file an affidavit stating that he believes, and has reason to believe, that, from prejudice or local influence, he will not be able to obtain justice in the state court. (4) That he give the requisite surety for appearing in the federal court at the proper time, with copies of the papers.

The first question is, had congress the competency to enact such a statute? The judicial power of the United States, as defined by the constitution, extends to controversies between citizens of different states, as well as to all cases in law or equity arising under the constitution and laws of the United States; and the former is given by the same section, and in the same sentence with the latter. The jurisdiction of cases arising under the constitution and laws of the United States has, under the 25th section of the judiciary act, been exercised after final judgment in the highest courts of the states, ever since the government was organized. The constitutionality of that act was drawn in question in Martin v. Hunter [1 Wheat. (14 U. S.) 104]. The cause had been brought up to the supreme court under the act, and the judgment of the court of appeals of the state of Virginia reversed. A mandate being sent to the latter court, it refused to carry into execution the judgment of the supreme court, on the ground that its appellate power did not extend to the judgments of the state court; and that, so far as the act attempted to confer the jurisdiction, it was unconstitutional. The question was thus precisely made, and in a most serious exigency. The determination was in favor of the constitutionality of the act, and the jurisdiction of the court. From that time to the present, at every term of the court, cases have been heard and determined under the authority of the 25th section of the judiciary act without question.

If a case of that character can be removed by a party who has submitted, without objection, to the jurisdiction of the state court, and after final judgment against him, I do not see why the jurisdiction of the federal courts dependent on citizenship may not be asserted at any time before final judgment. The power, as conferred by the constitution, is as full in one case as in the other. The case presented by the act is a controversy between a citizen of the state where the suit is brought and a citizen of another state. The jurisdiction conferred by the constitution is even broader than this, for it extends to controversies between citizens of different states, while by the act it is limited to a controversy in which one of the parties is a citizen of the state in which the suit is brought. The act is therefore within the constitutional power of congress.

The next question is, whether the fact that, pending the litigation in the state court, the plaintiff changed his citizenship from Nebraska to Iowa, stands in the way of the removal of the cause?

The act does not in terms prescribe the time at which the citizenship of the moving party must be acquired. Nor is there anything from which to imply that a time was intended to be limited in that regard. Had congress intended to confine the privileges of the act to parties who were citizens of different states at the commencement of the suit, it would have been very easy so to have provided. It did not see fit so to do. On the other hand, in express terms, or at least by the strongest implication, it provided otherwise. The language is, "Where a suit is now pending, or may hereafter be brought, in any such court in which there is a controversy between a citizen," &c., which is as much as to say, whenever a controversy shall arise in a suit pending in a state court, the parties to which shall at any time be citizens of different states, the cause may be removed. No time at which the citizenship shall be acquired is limited. So the inference is that it may be acquired at any time.

Nor is the case changed by the circumstance that the citizenship in Nebraska was abandoned, and that in Iowa acquired voluntarily, or even for the purpose of securing the right of removal. It has been repeatedly held that the fact that a party had removed from one state to another in order to be able to bring his suit in the federal court, did not affect the jurisdiction.

Thus, in Briggs v. French [Case No. 1,871], Mr. Justice Story says: "It is every day's practice for a citizen of one state to remove to another state, to become a citizen of the latter in order to enable him to prosecute suits and assert interests in the courts of the United States. And provided the removal be real, and not merely nominal, and he has truly become a citizen of another state, I have never understood that his motive for the act is inquirable into, or, if his motive is to prosecute a suit in the courts of the United States, that such a motive would defeat his right so to sue. It might be a circumstance to call in question the bona fides and reality of the removal or change of domicile. But if the new citizenship be really and truly acquired, his right to sue is a legitimate, constitutional, and legal consequence, not to be impeached by the motive of his removal."

So here the fact that this plaintiff changed his citizenship voluntarily, and in order to be able to effect a removal of his cause while it was pending in the state court, does not affect his legal right. With all our preconceptions on the subject of the limited circumstances in which the right of removal has been heretofore exercised, we are not at liberty to say that congress has, under the act of 1867, annexed any other conditions to its exercise than those mentioned. If it be said that it is extraordinary to allow the plaintiff to remove the cause in an emergency created by his own voluntary act, it may be replied, that it is only a question of costs, for he can discontinue his case in the state court, and bring a new suit for the same cause of action in this court.

It may be further said, that his right of removal is not wholly dependent on his own volition, for he must make oath to a condition of things which, in his belief, prevents him from having a fair trial in the state court. And in this respect the act gives him, on account of his citizenship, only the same right to remove the trial to the federal courts which plaintiffs have in the state courts to change the venue from one county or district to another.

I am therefore forced to conclude that congress intended, in reference both to plaintiffs and to defendants, to confer the right of removal from the state courts, in all cases where the amount in controversy exceeds $500, at any stage of the proceedings before the final trial is begun, and when the requisite citizenship is found to exist, on the applicants making the proper affidavit as to prejudice and local influence, and giving the required bond. The case before us comes within this rule, and was properly transferred to this court by the order of the state court. The motion is therefore overruled. Motion overruled.